**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**MP NEXLEVEL, LLC**, a Minnesota
limited liability company,

      Plaintiff,

      vs.                                                                                          No. CIV 08-273 MCA/CG

**CODALE ELECTRIC SUPPLY, INC.**,
a Utah corporation, and **YUCCA
TELECOMMUNICATIONS SYSTEMS, INC.**,
a New Mexico corporation,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant *Codale Electric Supply, Inc.'s Motion to Dismiss or Transfer Venue* [Doc. 13] filed on April 22, 2008, and Defendant Yucca Telecommunications Systems, Inc.'s *Motion to Strike Affidavits of Will Prince* [Doc. 32] filed on June 11, 2008. Having considered the parties' submissions, the relevant law, and being fully advised in the premises, the Court grants the motion to transfer venue for the reasons set forth below. This action will be transferred in its entirety to the United States District Court for the District of Utah pursuant to 28 U.S.C. § 1404(a). The motion to strike the documents purporting to be affidavits of Will Prince will be denied without prejudice.

**I.**      **BACKGROUND**

On March 14, 2008, Plaintiff MP Nexlevel, LLC, filed a complaint seeking damages and/or equitable relief against Defendants Codale Electric Supply, Inc. ("Defendant Codale"), and Yucca Telecommunications Systems, Inc. ("Defendant Yucca"). [Doc. 1.] Plaintiff's *Complaint* arises

from a dispute over the quality and expense of fiberoptic cable purchased from Defendant Codale that Plaintiff was installing for Defendant Yucca in conjunction with a telecommunications project situated in Portales, New Mexico. According to Plaintiff, Defendant Codale supplied an inferior quality of cable that could not be spliced effectively, resulting in delays and additional expense for the project. Plaintiff further contends that Defendant Yucca is attempting to hold Plaintiff liable for the delay and refusing to pay the full contract price even though an employee of Defendant Yucca allegedly caused the delay by agreeing to substitute the defective cable for that specified in the original contract.

On April 4, 2008, Defendant Yucca filed a *Counterclaim* [Doc. 7] against Plaintiff in conjunction with the filing of its *Answer* [Doc. 6.] Defendant Yucca's *Counterclaim* asserts that it is entitled to liquidated damages for the delay in completing the project and recoupment of the cost of a quantity of defective cable that was never used in the project.

Thus far the two Defendants have not filed any cross-claims against one another. Defendant Codale, however, has alluded to the possibility of filing a cross-claim against Defendant Yucca "for indemnity, contribution, estoppel, and other claims, for its role in directing Codale to supply the OFS glass cable of which [Plaintiff] and Yucca now complain." [Doc. 29, at 6.]

On April 22, 2008, Defendant Codale filed a *Motion to Dismiss or Transfer Venue* [Doc. 14] which invokes a forum selection clause contained in credit agreements into which both Plaintiff and Defendant Yucca allegedly entered. The parties requested and received extensions of time to complete briefing on this motion. [Doc. 18, 20, 24, 25, 26, 27.] Both Plaintiff and Defendant Yucca then disputed Defendant Codale's contention that a Salt Lake City, Utah court provides an exclusive or appropriate venue for adjudicating their respective claims, counterclaims, or defenses. [Doc. 19, 23.]

In their motion papers regarding the change-of-venue motion, Plaintiff and Defendant Codale have attached exhibits purporting to be "affidavits" of a Yucca employee named Will Prince. [Ex. E to Doc. 14-2; Ex. D to Doc. 23-3.]   On June 11, 2008, Defendant Yucca moved to strike these exhibits on the grounds that they are inadmissible hearsay because the documents are not sworn and do not contain the language required under 28 U.S.C. § 1746 for making a declaration under penalty of perjury in lieu of an affidavit.  [Doc. 32.]  Plaintiff and Defendant Codale oppose Defendant Yucca's motion to strike these documents and assert a number of potential scenarios under which they might seek to admit or use these documents in this litigation.  [Doc. 40, 41, 42.]

## II.     ANALYSIS

### A.     Standard of Review

Courts generally review a motion to dismiss or transfer for improper venue under Fed. R. Civ. P. 12(b)(3) according to the same standards that apply to motions to dismiss for lack of jurisdiction under Fed.  R. Civ. P. 12(b)(2).  See Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005).  Courts differ, however, as to which standard to apply when a party asserts that venue should be changed because of a forum selection clause which purports to require that an action be brought in a particular state or federal court located in another district.  See generally 17 James Wm. Moore *et al.*, Moore' Federal Practice § 111.04[4], at 111-44.2 to 111-52 (3d ed. 2008).  Some courts treat such forum selection clauses as invoking the standard of review for improper venue articulated in 28 U.S.C. § 1406(a) and Carnival Cruise Lines v. Shute, 499 U.S. 585 (1991), while others view the matter as invoking the standard for convenience transfers under 28 U.S.C. § 1404(a) and Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).

The parties have not identified any clear precedent from the Tenth Circuit on this point, but the weight of authority and the particular circumstances of this case persuade me that an analysis under 28 U.S.C. § 1404(a) and Stewart is appropriate here. In particular, I note that this case involves another Defendant (Yucca) to which the forum selection clause may not apply insofar as there is no cross-claim pending between the two defendants. I also note the existence of an unpublished disposition from the Tenth Circuit which appears to assume, without deciding, that the analysis under 28 U.S.C. § 1404(a) and Stewart can be used in this context. See King v. PA Consulting Group, Inc., 78 Fed. Appx. 645, 646-47 (10th Cir. 2003) (unpublished disposition citing Kerobo v. Southwestern Clean Fuels Corp., 285 F.3d 531, 539 (6th Cir. 2002)). There the Circuit Court noted that regardless of which standard applies, the question whether the forum selection clause was mandatory or permissive would still be pivotal in the analysis. See id. at 647.

### B.    **Whether the Forum Selection Clause is Mandatory**

Accordingly, I first address the parties' dispute over the meaning and effect of the forum selection clause invoked by Defendant Codale in the present case. Defendant Codale's "Credit Policy" contains the following language:

> CUSTOMER AGREES that any and all disputes with Codale shall be resolved in the state or federal courts situated in Salt Lake County, Utah, and that these courts shall have the exclusive jurisdiction over all such disputes except where jurisdiction is mandatory in another forum under a provision of the Utah Code.

[Ex. A to Doc. 14-2.]  Similar language is repeated in a section of Defendant Codale's "Standard Terms and Conditions Applying to All Sales" entitled "Attorney's Fees,

Jurisdiction, and Venue," which states that: "Buyer agrees that any and all disputes with Seller, including not just contract but also tort claims, shall be resolved in the state or federal courts situated in Salt Lake County, Utah, and that these courts shall have the exclusive jurisdiction over all such disputes." [Ex. A to Doc. 28-2.]

> The Tenth Circuit has held that
>
> when venue is specified, such as when the parties designate a particular county or tribunal, and the designation is accompanied by mandatory or obligatory language, a forum selection clause will be enforced as mandatory. Where only jurisdiction is specified, we will nonetheless enforce a forum selection clause if there is some additional language indicating the parties' intent to make venue exclusive.

American Soda, LLP v. U.S. Filter Wastewater Group, Inc., 428 F.3d 921, 926-27 (10th Cir. 2005) (citation and footnote omitted); accord Mueller v. Sample, 2004-NMCA-075, ¶ 11, 135 N.M. 748, 93 P.3d 769. The clauses at issue here contain both of these attributes: they name the tribunals of a particular county ("state or federal courts situated in Salt Lake County, Utah"), and they contain additional language suggesting an intent to make that venue exclusive ("these courts shall have the exclusive jurisdiction over all such disputes").

The only language suggesting a different forum is the reference to "where jurisdiction is mandatory in another forum under a provision of the Utah Code." Plaintiff, however, cites no provision of the Utah Code that would mandate a forum other than Salt Lake County, Utah, and the public policy behind the Utah Code appears to reject the general principle that "construction disputes should be litigated in the state in which the project is located." Jacobsen Constr. Co. v. Teton Builders, 2005 UT 4, ¶¶ 27-28, 106 P.3d 719, 726 (2005).

Thus, regardless of whether the forum selection clause at issue here is interpreted in accordance with federal common law, Utah law, or New Mexico law, the Court reaches the same conclusion: the clause is mandatory and establishes state or federal courts in Salt Lake County, Utah as the exclusive fora for disputes among parties to Defendant Codale's "Credit Policy" and "Standard Terms and Conditions Applying to All Sales."

### C.     Whether the Parties Agreed to the Forum Selection Clause

The next question is whether Plaintiff is a party to such agreements. I agree with Plaintiff that this question must be answered in the present forum before the matter can be dismissed for improper venue or transferred to another forum. See Gregory v. Interstate/Johnson Lane Corp., 188 F.3d 501, 1999 WL 674765, at *9 (4th Cir. 1999) (unpublished disposition).

Plaintiff contends that it is not a party to any agreement containing Defendant Codale's forum selection clause. In support of this contention, Plaintiff points to evidence suggesting that Plaintiff's Chief Financial Officer, Michael Aydt, did not review, sign, or retain a copy of Defendant Codale's "Credit Policy." [Ex. 1 to Doc. 23-2; Ex. A to Doc. 23-3.] Plaintiff's Vice President of Operations, Robbi Pribyl, also submitted an affidavit stating an "understanding that there was no specific signed agreement between the parties, and therefore the 'default' was to the Uniform Commercial Code." [Ex. 3 to Doc. 23-4.]

Assuming for purposes of argument that there was no *signed* agreement containing the forum selection clause at issue here, it does not necessarily follow that the clause is unenforceable. Our Supreme Court has enforced the terms of a forum selection clause in a

merchant's non-negotiated form contract even though the consumers were not notified of the clause until after they made their purchase.  See Carnival Cruise Lines, Inc., 499 U.S. at 595.  Citing Section 2-204 of the Uniform Commercial Code (UCC) and surveying its application in several other states, New Mexico courts have similarly concluded that a contract for a sale of goods may be made in any manner showing agreement, including conduct by both parties which recognizes the existence of such a contract.  See Fiser v. Dell Computer Corp., 2007-NMCA-087, ¶ 28, 142 N.M. 331, 165 P.3d 328, cert. granted, 2007-NMCERT-6, 142 N.M. 17, 162 P.3d 172; Elephant Butte Resort Marina, Inc. v. Wooldridge, 102 N.M. 286, 289, 694 P.2d 1351, 1354 (1985) (citing N.M. Stat. Ann. § 55-2-204(1) (Michie 1993)).  Interpreting Utah's version of the UCC, the Tenth Circuit also concluded that Section 2-204 allows one party's writing to form a contract when it is not signed by the other party or delivered back to the first party so long as there is some other objective manifestation of mutual assent to the terms of that writing.  See Osguthorpe v. Anschutz Land & Livestock Co., 456 F.2d 996, 1000 & n.3 (10th Cir. 1972) (citing Utah Code Ann. § 70A-2-204(1) (1965)); cf. Nat'l Environmental Service Co. v. Ronan Eng'g Co., 256 F.3d 995, 1004 (10th Cir. 2001) ("Because the UCC is intended to be applied uniformly across the various states, courts routinely turn to decisions from other states when there is no case law on point within the relevant jurisdiction.").  Even the authority cited by Plaintiff acknowledges that a clause "in an unsigned agreement, is enforceable if the other party's conduct evinced an intent to be bound by the agreement."  Software for Moving, Inc. v. La Rosa Del Monte Express, Inc.,

No. 07 C 1839, 2007 WL 4365363, at *4 (N.D. Ill. 2007) (unpublished disposition collecting cases).

Here the evidence of record shows that Plaintiff filled out and submitted a credit application form to Defendant Codale dated September 14, 2005, and thereafter purchased goods from Defendant Codale on credit with interest accruing on past-due invoices. [Ex. B to Doc. 14-2; Ex. 2, 3, 4, 5 to Doc. 30-3.] The credit-application form that Plaintiff submitted at that time is taken from a four page booklet containing Defendant Codale's credit policy (including the forum selection clause), personal guaranty form, and standard terms and conditions (also including the forum selection clause). [Doc. 30; Ex. 1 to Doc. 30-2.]

Plaintiff has not tendered admissible evidence of any communications with Defendant Codale at the time of the credit application, credit approval, or original purchase order in 2005 which indicate that Plaintiff proposed an alternative form of agreement or that Plaintiff rejected the credit policy or standard terms and conditions proposed by Defendant Codale at that time. In particular, Plaintiff has not pointed to any different or additional terms relevant to this dispute in the purchase order dated September 30, 2005, which is referenced in Paragraph 10 of the *Complaint.* [Doc. 1.]

Instead, Plaintiff points to subsequent communications among the parties and their attorneys in 2006 after a quantity of the fiberoptic cable had already been delivered and the dispute over its quality and expense had arisen. Such communications refer back to an original credit application and an original set of terms and conditions, but such references are not helpful to resolving the present controversy over the forum selection clause because they

do not specify what those original terms and conditions are. [Ex. F, G to Doc. 14-2; Ex. B, C to Doc. 23-3.]

Plaintiff claims that if the terms and conditions at issue here were missing from the original agreement, then by default the "gap-filler" provisions of the Uniform Commercial Code (UCC) would apply. [Ex. 3 to Doc. 23-4.] However, Plaintiff does not specifically identify which state's version of the UCC applies or cite any particular UCC provision addressing forum selection, credit policies, or payment terms. Plaintiff also has not tendered any evidence that it declined Defendant Codale's offer of credit and defaulted to the UCC's "gap-filler" for payment terms, which requires cash on delivery of the goods. See N.M. Stat. Ann. §§ 55-2-310(a), 55-2-507(1) (Michie 2005); Utah Code Ann. §§ 70A-2-310(1), 70A-2-507(1) (West 2008); James J. White & Robert S. Summers, Uniform Commercial Code § 3-7, at 222-23 (5th ed. 2006). Instead, the evidence concerning the parties' course of performance and trade usage with respect to payment terms is consistent with the procedure stated in Codale's credit policy. See N.M. Stat. Ann. § 55-1-303 (Michie 2005); Utah Code Ann. § 70A-1a-303 (West 2008).

Under these circumstances, the Court determines that the terms and conditions of the parties' original agreement in 2005 included the forum selection clause set forth in Defendant Codale's credit policy and incorporated in the four-page booklet containing the credit-application form, even if the signature below that policy is disregarded and a signed copy of the policy was never returned to Defendant Codale. Having determined that the forum selection clause is phrased in mandatory terms and is binding on the Plaintiff in this case, I

further conclude that this determination weighs heavily in favor of transferring venue to the United States District Court for the District of Utah.  The burden shifts to Plaintiff to show why it should not be bound by its contractual choice of forum.  See Jumara v. State Farm Ins. Co., 55 F.3d 873, 880 (3d Cir. 1995); In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989).

### D.      Other Factors Relevant to Transfer of Venue Under 28 U.S.C. § 1404(a)

Determining the parties' contractual choice of forum does not end the Court's inquiry because dismissal or transfer of venue is governed by federal law and is not necessarily bound by state-law principles of contract formation or interpretation.  The relevant federal statute at issue here, 28 U.S.C. § 1404(a), gives district courts the discretion to transfer cases based on individualized considerations of convenience and fairness, which include but are not limited to the parties' contractual choices.  See Stewart Org., Inc., 487 U.S. at 29 (citing Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).

In addition to the forum selection clause in the agreement between Plaintiff and Defendant Codale, the Court also considers the following non-exhaustive list of factors:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; . . . the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)[;] . . . the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Jumara, 55 F.3d at 879 (citations omitted); accord Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1516 (10th Cir. 1991) (citing Texas Gulf Sulphur Co. v. Ritter, 371 F.2d 145, 147 (10th Cir.1967)).

The forum selection clause specifying a state or federal court in Salt Lake County, Utah is treated as a manifestation of Plaintiff's and Defendant Codale's preferences as to a convenient forum for this action. See Jumara, 55 F.3d at 880. However, the Court also considers Defendant Yucca's preference to keep the litigation in New Mexico insofar as Defendant Yucca is not bound by the forum selection clause under the current posture of the case (where there are no cross-claims between the two Defendants).

Defendant Codale still carries the burden of showing that a transfer of Plaintiff's claims against Defendant Yucca is appropriate under 28 U.S.C. § 1404(a). The forum selection clause in the agreement between Plaintiff and Defendant Codale does not necessarily require Plaintiff's claims against Defendant Yucca to be transferred, because the Court retains the authority to sever such claims and keep them in the District of New Mexico even if Plaintiff's claims against Defendant Codale are transferred elsewhere following the severance. See Carver v. Knox County, 887 F.2d 1287, 1293 (6th Cir. 1989). But cf. Chrysler Credit Corp., 928 F.2d at 1518 (noting that individual claims cannot be transferred absent a proper severance).

In light of the other factors listed above, such a severance is not warranted in this case. Both defendants are so closely involved in the disputed series of transactions that severing Plaintiff's claims against each Defendant would likely require many of the same issues to be

litigated in two places using many of the same witnesses and evidence.  See Sunbelt Corp. v. Noble, Denton & Assoc., 5 F.3d 28, 33-34 (3d Cir. 1993).  Under the circumstances presented here, such duplicative litigation would likely cause greater expense and inconvenience to the parties and their witnesses; it would also raise the prospect of inconsistent rulings in each forum, as well as administrative difficulties in attempting to coordinate the proceedings between two districts.  See id. (noting the prospect that a severance would allow each defendant to defend by asserting the absent party's negligence).

The Court notes, for example, the current controversy over the documents purporting to be affidavits of Will Prince.  While the admissibility of these documents in subsequent proceedings may depend on the particular purpose for which they are being offered and against whom they are being offered, for purposes of the present venue inquiry under 28 U.S.C. § 1404(a) they merely show that the issues and the evidence relevant to Plaintiff's claims against each Defendant are likely to become further intertwined with one another.  Without considering the truth of the matters asserted in these documents, they evince what is likely to become an ongoing dispute about whether an agent of Defendant Yucca authorized the changes to the specifications for the fiberoptic cable which gave rise to the controversy between Plaintiff and Defendant Codale.  Such interrelationships between Plaintiff's claims against each Defendant weigh in favor of keeping all the claims and parties together in the same forum.

Given the importance of keeping all these claims together in the same forum, the next question is whether they deserve to be litigated in the District of New Mexico instead of the

District of Utah.  Ordinarily, it may be more convenient to keep the litigation in the same district as the project site and the parties' offices when the witnesses and the evidence are likely to remain at those locations.  But the project site at issue here is located in Portales, New Mexico, which is a rural area of considerable distance from the nearest federal courthouse in the District of New Mexico.

The record further indicates that there will be numerous witnesses from out of state [Doc. 31], for whom travel to the federal courthouse in Salt Lake County, Utah is probably of lesser or equal inconvenience than travel to the federal courthouses in Roswell, New Mexico, or Albuquerque, New Mexico.  For example, Plaintiff's offices are located in Minnesota, and it appears that Plaintiff intends to call as witnesses, or attempt to join as parties, several persons from other states, including representatives of Superior Essex, Inc., the Georgia manufacturer of the allegedly defective cable, and Furukawa Electric North America, Inc., the Georgia manufacturer of the glass used in that cable.  [Doc. 48.]

Plaintiff has not shown that personal jurisdiction over the Defendants, or the availability of compulsory process for witnesses, would be lacking in the District of Utah. In this regard, the Court notes that *both* Plaintiff and Defendant Yucca established minimum contacts with the State of Utah when they entered into agreements with Defendant Codale and submitted purchase orders regarding an interrelated series of transactions for the project that gave rise to this litigation. Defendant Yucca does not dispute that it submitted the credit application and signed the credit policy in which the company availed itself of Utah law. [Ex. C to Doc. 14-2.]  Under these circumstances, allowing certain parties to manipulate

jurisdictional requirements in order to split the litigation into several districts would not be consistent with the statute's remedial goal of avoiding duplicative litigation of related claims. See 17 James Wm. Moore *et al.*, supra § 111.12[1][c][ii], at 111-57 to 111-60 (citing Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 22-23 (1960), and Van Dusen, 376 U.S. at 634).  Thus, an especially strong showing of the reasonableness of the Utah forum serves to fortify any weaknesses with respect to Defendant Codale's showing of the other parties' minimum contacts with that state.  See OMI Holdings, Inc. v. Royal Ins. Co., 149 F.3d 1086, 1092 (10th Cir. 1998) (citing Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 210 (1st Cir. 1994)).

Any advantage that the District of New Mexico may present with respect to the witnesses and evidence located in Portales, New Mexico is likely to be offset by the fact that Defendant Codale's witnesses and documents are located in Salt Lake County, Utah.  As demonstrated in the controversy concerning the forum selection clause, there appear to be documents and records (such as Defendant Codale's credit policy, credit application, and standard terms and conditions) which need to be located and authenticated in Utah because they apparently cannot be found in Plaintiff's files.

The Court also notes that the existing parties have requested a two-week trial.  [Doc. 31.] Both the length of the trial and the complexity of the litigation may increase if Plaintiff succeeds in joining additional parties and claims at a later date [Doc. 48], or if Defendant Codale's reference to the possibility of a cross-claim against Defendant Yucca [Doc. 29] comes to fruition.  Given the high volume and complexity of criminal cases pending in the

District of New Mexico for the foreseeable future, the District of Utah may present a less congested forum in which the parties' scheduling needs can be accommodated in a more expeditious manner.

Finally, the Court notes that this action involves a type of commercial dispute among merchants for which forum selection clauses are not uncommon. The evidence of record does not show a gross imbalance in bargaining power or access to counsel among the litigants, nor have the parties demonstrated a strong federal interest in adjudicating their disputes with one another in a district other than the one identified in the forum selection clauses. On the contrary, federal courts have stressed the importance of keeping merchants in the forum they have bargained for in these types of contractual disputes. See In re Ricoh Corp., 870 F.2d at 573. Accordingly, the Court determines that, on balance, the relevant factors discussed above weigh in favor of transferring this litigation in its entirety to the United States District Court for the District of Utah pursuant to 28 U.S.C. § 1404(a).

Careful consideration of these factors also indicates that transfer to the District of Utah is a more appropriate remedy than dismissing some or all of the parties' claims without prejudice under 28 U.S.C. § 1406(a). The likely result of a dismissal for improper venue would be that the action is refiled in state court, which could entail additional inconvenience or procedural disadvantage to the parties not familiar with litigating in that forum. Transferring the action to a federal court in another district serves to lessen or avoid such inconvenience or procedural disadvantages.


### E.    Defendant Yucca's Motion to Strike

Because they appear as part of the record concerning Defendant Codale's motion to dismiss or transfer venue, the Court will briefly address Defendant Yucca's motion to strike the documents purporting to be affidavits of Will Prince.  As noted above, the venue inquiry under 28 U.S.C. § 1404(a) only warrants consideration of these documents for the limited, non-hearsay purpose of showing the interrelated nature of the disputes among the parties (including the dispute over the alleged affidavits' authenticity or admissibility).  Given the limited purpose for which they are being considered, it is not necessary to strike Mr. Prince's alleged affidavits at this preliminary juncture.  Defendant Codale's motion is therefore denied without prejudice.

In so ruling, the Court does not consider the disputed documents for the truth of the matters asserted therein, and by permitting them to be made part of the record on Defendant Codale's motion to dismiss or transfer venue, this *Memorandum Opinion and Order* neither states nor implies that they are admissible for any other purpose.  None of the parties are precluded from challenging any further attempt to use the alleged affidavits of Will Prince in this proceeding or any other proceeding.

### III.   CONCLUSION

For the foregoing reasons, the Court grants Defendant Codale's motion to transfer this action in its entirety to the United States District Court for the District of Utah pursuant to 28 U.S.C. § 1404(a). Defendant Yucca's motion to strike the documents purporting to be affidavits of Will Prince is denied without prejudice.

**IT IS THEREFORE ORDERED** that Defendant *Codale Electric Supply, Inc.'s Motion to Dismiss or Transfer Venue* [Doc. 13] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Yucca Telecommunications Systems, Inc.'s *Motion to Strike Affidavits of Will Prince* [Doc. 32] is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that this action is hereby **TRANSFERRED** to the United States District Court for the District of Utah pursuant to 28 U.S.C. § 1404(a).

**SO ORDERED** this 4th day of August, 2008, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge